**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02155-NYW

C.K.D.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This civil action arises under Title II, 42 U.S.C. §§ 401 *et seq.*, of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by C.K.D. ("Plaintiff" or "C.K.D.").[1] After carefully considering the Parties' arguments, the Administrative Record, and the applicable case law, the Commissioner's decision is respectfully **REVERSED** and **REMANDED**.

**BACKGROUND**

Plaintiff alleges that she became disabled on February 7, 2017 due to the following conditions: chronic depression; anxiety; panic attacks; aggressive osteoarthritis; left knee replacements; fibromyalgia with joint pain and an inability to move joints; chronic insomnia; essential hypertension; chronic headaches; iron deficiency; right hip pain; blood clot history;

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this court refers to Plaintiff using her initials only.

asthma; high blood pressure; and gastroesophageal reflux disease. [Doc. 11-3 at 81-82; Doc. 11-6 at 274].[2] Given her various ailments, Plaintiff filed an application for DIB on January 30, 2018. [Doc. 11-3 at 73]. The Social Security Administration denied Plaintiff's application on December 26, 2018. [Doc. 11-4 at 104]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see* [*id.* at 107], which was held before ALJ Jennifer B. Millington on September 21, 2020. [Doc. 11-2 at 43, 45].

Following the hearing, the ALJ issued a decision on October 30, 2020, finding that Plaintiff met the insured-status requirements of the Act through December 31, 2022 and that she had not engaged in substantial gainful activity as of her alleged disability onset date of February 7, 2017. [*Id.* at 26-27, 36]. The ALJ determined that Plaintiff has the following severe impairments:

> Ehlers-Danlos syndrome with hypermobility of joints, chronic pain syndrome, fibromyalgia, obesity, lumbar spondylolisthesis/low back pain, cervical compression deformities, thoracic kyphosis, right hip trochanteric bursitis, status post right hip arthroplasty, right hip pain secondary to degenerative arthritis, left knee replacement, right anterior cruciate ligament (ACL) arthritis, right shoulder impingement and mild subchondral sclerosis, tremor of both hands, history of gastric bypass, migraines, depression, anxiety, and panic attacks.

[*Id.* at 27]. The ALJ determined that Plaintiff's medically determinable impairments significantly limit her ability to perform basic work activities. [*Id.*]. However, the ALJ concluded that Plaintiff maintained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1657(b),[3] with the following limitations:

---

[2] When citing to the Administrative Record, the Court utilizes the docket number assigned by the Electronic Case Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the ECF system.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

> [Plaintiff] can stand and walk four hours per eight-hour workday. She can never climb ladders, ropes and scaffolds. She can occasionally climb stairs and ramps. She can frequently stop and crouch. She can occasionally crawl. She can frequently handle and finger bilaterally. She is limited to simple, routine tasks with occasional work interactions with the public.

[*Id.* at 29-30]. The ALJ continued, "[b]ased on the testimony of the vocational expert [("VE")], . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," [*id.* at 36], and concluded that Plaintiff is not disabled. [*Id.*].

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on June 12, 2021, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on August 9, 2021. [Doc. 1].

## LEGAL STANDARD

An individual is eligible for DIB benefits under the Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if his or her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has

---

this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. SSR 83-10, 1983 WL 31251, at *7 (SSA 1983). "'The RFC assessment must include a narrative discussion

4

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (SSA 1996) ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). In making this determination, the Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

C.K.D. argues that the ALJ erred in rendering her decision in several respects. First, she asserts that the ALJ failed to consider all of Plaintiff's medically determinable impairments, and the combined effect of those impairments, in determining that Plaintiff is not disabled. [Doc. 13

5

at 11]. Next, she maintains that the ALJ failed to sufficiently explain how Plaintiff's physical and mental limitations translate into an ability to perform work on a sustained basis. [*Id.* at 15]. She further argues that the ALJ failed to reasonably evaluate her subjective complaints about the effects of her combined impairments. [*Id.* at 16-17]. Finally, C.K.D. contends that the ALJ erred in failing to address or reconcile material conflicts in the record evidence. [*Id.* at 19]. The Court finds Plaintiff's last argument dispositive and limits its analysis accordingly.

The Dictionary of Occupational Titles ("DOT") sets forth a Scale of General Educational Development ("GED"), which describes the various requirements in maintaining satisfactory job performance. *See* DOT App'x C, § III. The GED addresses three areas of educational development—reasoning development, mathematical development, and language development—and describes six levels of each development type. *Id.* Relevant here, the GED defines levels one and two of reasoning as follows:

> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id.* At the hearing, the VE testified that a person with Plaintiff's age, education, work experience, and RFC could work as a final assembler (with 21,000 jobs nationally), an electronics worker (with 32,000 jobs nationally), or a semiconductor bonder (with 13,000 jobs nationally).[4] [Doc. 11-2 at 71]. The ALJ relied upon this testimony in her determination that Plaintiff is capable of performing work that exists in significant numbers in the national economy. [*Id.* at 35-36]. The ALJ further

---

[4] The ALJ referred to this job as a "Bonder/Operator." [Doc. 11-2 at 35]. For purposes of clarity, this Court refers to the position as used in the Dictionary of Occupational Titles. *See* DOT § 726.685-066 ("bonder, semiconductor").

6

stated that she "determined that the vocational expert's testimony is consistent with the information contained" in the DOT. [*Id.* at 36]. The positions of semiconductor bonder and electronics worker each require level-two reasoning. *See DOT* § 726.687-010 (electronics worker); *DOT* § 726.685-066 (semiconductor bonder). Plaintiff argues that the ALJ erred at the step five determination by relying on jobs that are inconsistent with her RFC limitation to "simple, routine tasks." [Doc. 13 at 19].

Because the ALJ's determination of available jobs was performed at step five, it was the ALJ's burden at the administrative level to demonstrate that there are a significant number of jobs in the national economy which Plaintiff is able to perform. *Neilson*, 992 F.2d at 1120. "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000); *see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (the ALJ has a duty to "[q]uestion[] a vocational expert about the source of his [or her] opinion and any deviations from a publication recognized as authoritative by the agency's own regulations"). The failure to address an apparent conflict between the claimant's RFC and the requirements of the jobs identified as appropriate by the VE is reversible error. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

The Commissioner asserts that there was no error in the ALJ's decision. First, she argues that the GED measures "educational attainment," rather than job complexity, and there was thus no conflict between the VE testimony and Plaintiff's RFC that the ALJ was required to address. [Doc. 17 at 13]. In support of her argument, the Commissioner cites two unpublished Tenth Circuit cases—*Anderson v. Colvin*, 514 F. App'x 756 (10th Cir. 2013), and *Mounts v. Astrue*, 479 F.

App'x 860 (10th Cir. 2012). *See* [*id.*].[5] The Court is respectfully unpersuaded by this argument, which this Court has previously addressed in detail. *See M.D. v. Kijakazi*, No. 21-cv-01963-NYW, 2022 WL 3227621, at *10-14 (D. Colo. Aug. 10, 2022). In *M.D.*, this Court analyzed the state of Tenth Circuit case law addressing this issue, beginning with the Circuit's 2005 decision in *Hackett*. *See id.* at *11-12. In *Hackett*, the claimant argued on appeal that her RFC—which provided that she "retain[ed] the attention, concentration, persistence and pace levels required for simple and routine work tasks"—was incompatible with the level-three reasoning jobs identified by the ALJ as possible employment positions for the claimant. *Hackett*, 395 F.3d at 1175-76. The Tenth Circuit agreed with the claimant that her functional limitations "seem[ed] inconsistent with the demands of level-three reasoning." *Id.* at 1176. Furthermore, the Tenth Circuit noted that level-two reasoning requires applying commonsense reasoning to detailed but uninvolved instructions and opined that "[t]his level-two reasoning appears more consistent with [the claimant's] RFC." *Id.* Accordingly, the Tenth Circuit reversed and remanded this portion of the ALJ's decision with instructions for the ALJ to address the conflict between the claimant's "inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.* In other words, under *Hackett*, "the reasoning levels in the GED are relevant in constructing a claimant's RFC, and if a conflict arises between the DOT and the VE testimony, the ALJ must resolve that conflict before relying on the VE's testimony." *M.D.*, 2022 WL 3227621, at *12. In light of this precedent, this Court concludes, as it did in *M.D., see*

---

[5] In *Anderson*, the Tenth Circuit stated that the GED "does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development." *Anderson*, 514 F. App'x at 764. And in *Mounts*, the Tenth Circuit stated that "a claimant's GED . . . is the level of formal and informal education required to perform a specific job." *Mounts*, 479 F. App'x at 868.

8

*id.* at *11-12, that while *Mounts* and *Anderson* could be read to support the Commissioner's argument, it is bound to follow the Tenth Circuit's published decision in *Hackett*.

In the alternative, the Commissioner contends that Plaintiff's RFC limitations are consistent with the demands of reasoning level two. [Doc. 17 at 14]. First, the Commissioner asserts that in *Hackett*, the Tenth Circuit "determined that a mental RFC limitation to 'simple and routine work tasks' appeared *consistent* with GED reasoning level two jobs." [*Id.* (emphasis in original)]. Second, the Commissioner maintains that district courts within this Circuit "have repeatedly found that similar mental RFC limitations were consistent with a GED reasoning level of two." [*Id.* (citing cases)]. C.K.D. does not respond to the Commissioner's reliance on *Hackett*, instead simply asserting that "there are as many cases that conflict with Defendant's position as there are cases Defendant relies upon in support." *See* [Doc. 18 at 3-4]. The Court addresses the Commissioner's two arguments together.

First, the Court acknowledges the significant district-court split of authority on this issue, which can be fairly traced to the Tenth Circuit's statement in *Hackett* that the claimant's RFC limitation to simple and routine work tasks "appear[ed] more consistent" with level-two reasoning than level-three reasoning. *Hackett*, 395 F.3d at 1176. A number of district courts have interpreted this statement as a holding that a limitation to "simple tasks" is consistent with level-two reasoning skills. *See, e.g.*, *Lee v. Commissioner*, No. CIV-17-362-KEW, 2019 WL 1258836, at *4 (E.D. Okla. Mar. 19, 2019); *Dickson v. Saul*, No. CIV-19-248-SM, 2019 WL 5684513, at *3 (W.D. Okla. Nov. 1, 2019); *Dean v. Saul*, No. CIV-18-368-SPS, 2020 WL 5235339, at *4 (E.D. Okla. Sept. 2, 2020). Other courts, however, have construed the statement in *Hackett* as non-binding dicta. *See, e.g.*, *Alissia M. v. Saul*, No. 19-2105-EFM, 2020 WL 1847745, at *11 (D. Kan. Apr. 13, 2020) ("The issue of whether a GED reasoning level of two conflicts with simple work was not before

the Court in *Hackett*."); *C.P. v. Saul*, No. 19-1256-JWB, 2020 WL 6544582, at *7 (D. Kan. Nov. 6, 2020) ("*Hackett*'s comment about level two reasoning jobs was dicta"); *Ashley C v. Saul*, No. 17-CV-675-JED-GBC, 2020 WL 5229701, at *2 (N.D. Okla. Sept. 2, 2020) (same); *cf. Flores v. Berryhill*, No. CV 16-279 KK, 2017 WL 3149353, at *8 (D.N.M. June 2, 2017) ("[T]he Tenth Circuit determined in *Hackett* that level-two reasoning jobs *appeared* to be more consistent with the ability to do simple and routine work tasks, but did not decisively foreclose the possibility there may be factual circumstances where level two reasoning jobs could be inconsistent with a claimant's ability to perform simple tasks.") (emphasis in original).

The Court respectfully disagrees with the Commissioner that *Hackett* is dispositive here. The *Hackett* court did not expressly hold that a limitation to simple, routine tasks is consistent with jobs requiring level-two reasoning. *See Hackett*, 395 F.3d at 1176; *see also Flores*, 2017 WL 3149353, at *8. In fact, the *Hackett* court "did not hold . . . that 'simple and routine work tasks' could never, as a matter of law, include *level 3* reasoning demands." *C.H.C. v. Commissioner*, No. 20-cv-02428-KLM, 2022 WL 950433, at *7 (D. Colo. Mar. 29, 2022) (emphasis added). "Rather, the Tenth Circuit merely held that the ALJ was required 'to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE.'" *Id.* (quoting *Hackett*, 395 F.3d at 1176). The issue of whether level-two reasoning is consistent with a limitation to simple tasks was not before the court in *Hackett*, *see* 395 F.3d at 1176, and thus, the Court declines the Commissioner's invitation to rely upon dicta. And for this reason, the Court is thus less persuaded by those district-court decisions wherein the court, relying on *Hackett*, found no inconsistency between level-two reasoning and a limitation to simple tasks, a number of which are relied upon by the Commissioner in her briefing. *See* [Doc. 17 at 14-15].

Here, the ALJ determined that Plaintiff is limited to "simple, routine tasks," [Doc. 11-2 at 30], but simultaneously concluded that she could perform jobs requiring her to "[a]pply commonsense understanding to carry out detailed but uninvolved written instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." [*Id.* at 35-36]; *DOT*, App'x C, § III. A number of courts have concluded that there appears to be an inconsistency between these two conclusions, requiring the ALJ to either resolve the conflict or explain why no such conflict exists. *See, e.g.*, *Little v. Commissioner*, No. CIV-18-289-KEW, 2020 WL 1545747, at *4 (E.D. Okla. Apr. 1, 2020); *Ashley C*, 2020 WL 5229701, at *2; *see also Martinez v. Kijakazi*, No. CV 20-1024 JFR, 2022 WL 1773682, at *6, 8 (D.N.M. June 1, 2022) (finding a potential conflict between "unskilled work that is simple, routine, and repetitive" with a job that requires level-two reasoning and remanding for further explanation).[6]

The Court agrees with C.K.D. that an apparent inconsistency exists between her RFC limitations and the jobs identified for her in the ALJ's decision. "If a claimant is limited to simple

---

[6] Similarly, a number of courts, including this Court, have held that a limitation to simple *instructions* is inconsistent with jobs requiring level-two reasoning. *See M.D.*, 2022 WL 3227621, at *12; *C.H.C.*, 2022 WL 950433, at *8; *Deveraeaux v. Astrue*, No. 12-cv-01168-WJM, 2013 WL 2393075, at *8 (D. Colo. May 31, 2013). The Tenth Circuit has not yet "spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions," *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016), and there is a split in district-court authority as to whether the two limitations are analogous or distinguishable. *Compare Calvin v. Kijakazi*, No. CIV-21-1046-SM, 2022 WL 3268745, at *4 (W.D. Okla. Aug. 10, 2022) ("Although a limitation to simple *tasks* is consistent with a reasoning level of two, that is not the case for a limitation to simple *instructions*.") *with Little*, 2020 WL 1545747, at *4 ("[An] RFC limitation to 'simple tasks' . . . would necessarily entail simple instructions and not detailed instructions."). The Court notes, however, that the cases finding a distinction between the two overwhelmingly rely on the Tenth Circuit's statement in *Hackett* in reaching that conclusion. *See, e.g.*, *Dean v. Saul*, No. CIV-18-368-SPS, 2020 WL 5235339, at *4 (E.D. Okla. Sept. 2, 2020); *Trenton L. v. Kijakazi*, No. CV 21-117 SCY, 2022 WL 2918356, at *4 (D.N.M. July 25, 2022). Because this Court interprets *Hackett*'s statement differently than these courts, and because the Parties appear to use the two terms interchangeably in their briefing, *see* [Doc. 13 at 19-20; Doc. 17 at 14], the Court does not find that Plaintiff's RFC limitation to simple *tasks* materially alters its analysis here.

tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions [i.e., jobs requiring level-two reasoning] would create a conflict." *Tabor v. Colvin*, No. CIV-14-281-RAW-SPS, 2015 WL 5724857, at *3 (E.D. Okla. Sept. 29, 2015).  To be clear, the Court does not agree with Plaintiff that her RFC determination *necessarily* limits her to jobs requiring level-one reasoning, and the Court expressly declines to rule that a limitation to simple, routine tasks is *de facto* incompatible with level-two reasoning jobs.  However, there appears to be a conflict in the evidentiary record and it does not appear that the ALJ examined or resolved this conflict as required.  *See* SSR 00-4p, 2000 WL 1898704, at *2; *Haddock*, 196 F.3d at 1091.  Because the ALJ failed to resolve or address the apparent conflict in the record, remand is appropriate with instructions for the ALJ to address the apparent inconsistency.  *C.H.C.*, 2022 WL 950433, at *8.[7]

For the foregoing reasons, the Court concludes that the ALJ erred in not explaining the apparent inconsistency between the VE's testimony (and her subsequent determination at step five) with Plaintiff's RFC.  The Court declines to pass on the remaining arguments raised in Plaintiff's briefing, as "they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  However, on remand, the ALJ is directed to consider the remaining issues raised in C.K.D.'s briefing and to modify her decision if appropriate.

---

[7] The Commissioner notes that "the ALJ asked the vocational expert . . . if there were any inconsistencies between his testimony and the DOT, and the vocational expert testified there were none," and argues that "[t]his inquiry is all that was required" of the ALJ. [Doc. 17 at 12].  The Court respectfully disagrees.  "That the VE failed to identify a conflict after assuring the ALJ that he would do so did not relieve the ALJ to investigate regarding a conflict [herself]." *Rutledge v. Kijakazi*, No. CIV-21-1012-C, 2022 WL 2232518, at *4 (W.D. Okla. May 31, 2022), *report and recommendation adopted*, 2022 WL 2232205 (W.D. Okla. June 21, 2022).  "When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).

## CONCLUSION

The Court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.

DATED:  September 16, 2022

BY THE COURT:

_____
Nina Y. Wang
United States District Judge